JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Magdy Abdelmassih

**(b)** County of Residence of First Listed Plaintiff  Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Joyce L. Collier, Esq.
Collier Law, P.C., 1432 Bethlehem Pike, Suite D
Flourtown, PA  19031          267-422-6174

## DEFENDANTS

Mitra QSR KNE, LLC, Rakesh Ramdass, Pushpak Patel, Manish Patel, KFC Corporation and Yum! Brands, RSC

County of Residence of First Listed Defendant    Dallas
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:     IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Christina Marshall, Esq.
Chalak Mitra Group
18900 Dallas Pkwy, Ste. 125
Dallas, TX 75287  (214) 774-4240

Robert P. Floyd, III, Esq.
Constangy, Brooks, Smith & Prophete LLP
12500 Fair Lakes Circle, Ste. 300
Fairfax, VA 2203          571-522-6109

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
        Plaintiff

☒ 3  Federal Question
        *(U.S. Government Not a Party)*

☐ 2  U.S. Government
        Defendant

☐ 4  Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
      Proceeding

☐ 2 Removed from
      State Court

☐ 3 Remanded from
      Appellate Court

☐ 4 Reinstated or
      Reopened

☐ 5 Transferred from
      Another District
      *(specify)*

☐ 6 Multidistrict
      Litigation -
      Transfer

☐ 8 Multidistrict
      Litigation -
      Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. §§ 621-634; 42 U.S.C. § 12101; 43 P.S. §§ 951-963; 29 U.S.C. §§ 201; 43 P.S. §§ 260.1; 29 U.S.C. §§ 1001; & 29 U.S.C. §§ 1161-1169

Brief description of cause:
Employment discrimination based on age & disability; FMLA interference & retaliation; wage payment, COBRA, & ERISA violations

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
    UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   9-13-16

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:  1659 Bishopwood Boulevard East, Harleysville, PA 19438

Address of Defendant: 18900 Dallas Parkway, Suite 125, Dallas, TX 75287

Place of Accident, Incident or Transaction:  32 Airport Square, North Wales, PA 19454; 1865 Easton Rd, Willow Grove, PA 19090

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☒  No☐

Does this case involve multidistrict litigation possibilities?    Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

    Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

    Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

    Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?

    Yes☐  No☒

---

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

---

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Joyce L. Collier, Esq. , counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 9-13-16 _____  _____  54324
                                Attorney-at-Law          Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 9-13-16 _____  _____  54324
                                Attorney-at-Law          Attorney I.D.#

CIV. 609 (5/2012)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

|  |  |  |
|---|---|---|
| Magdy Abdelmassih | : | CIVIL ACTION |
| v. | : | |
| Mitra QSR KNE, LLC, Rakesh Ramdass, Pushpak Patel, Manish Patel, KFC Corporation & Yum! Brands, RSC | : : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.          ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (X)

| | | |
|---|---|---|
| 9-13-16 | | Magdy Abdelmassih |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 267-422-6174 | 267-422-6178 | joyce@collierlawpc.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**COLLIER LAW, P.C.**
BY:    **JOYCE COLLIER, ESQ.** (ID No. 54324)
1432 Bethlehem Pike, Suite D
Flourtown, PA  19031
(267) 422-6174
*Attorney for Plaintiff Magdy Abdelmassih*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| **MAGDY ABDELMASSIH**<br>1659 Bishopwood Boulevard East<br>Harleysville, PA  19438 | : |
| | : |
| Plaintiff | : |
| | : CIVIL ACTION NO. |
| v. | : |
| | : |
| **MITRA QSR KNE LLC**<br>18900 Dallas Parkway<br>Suite 125<br>Dallas, TX  75287, | : JURY TRIAL DEMANDED |
| | : |
| **RAKESH RAMDASS**<br>18900 Dallas Parkway<br>Suite 125<br>Dallas, TX 75287, | : |
| | : |
| **PUSHPAK PATEL**, Individually and as<br>Plan Administrator of the Mitra 401(k) Plan<br>18900 Dallas Parkway<br>Suite 125<br>Dallas, TX 75287, | : |
| | : |
| **MANISH PATEL**, Individually<br>18900 Dallas Parkway<br>Suite 125<br>Dallas, TX 75287, | : |
| | : |
| **KFC CORPORATION**<br>1441 Gardiner Lane<br>Louisville, KY  40213, | : |
| | : |
| and | : |

**YUM! BRANDS RSC**                                :
1900 Colonel Sanders Lane                          :
Louisville, KY 40213,                              :
                                                   :
      Defendants.    :

---

## COMPLAINT

### I.    INTRODUCTION

1.     This action for equitable, monetary, and other relief is brought by Plaintiff, Magdy Abdelmassih, to redress intentional violations by Defendants Mitra QSR KNE, LLC, Rakesh Ramdass, Pushpak Patel, Manish Patel, KFC Corporation, and Yum! Brands RSC of rights secured by the laws of the United States and the statutory and common law of the Commonwealth of Pennsylvania.

2.     After serving as an engineer in the Egyptian Army for twenty-seven years and attaining the status of colonel, Magdy Abdelmassih legally immigrated to America in 1997, along with his wife and two young sons, Ramy and Robeir. Mr. Abdelmassih, a Coptic Christian, is a citizen of the United States.

3.     In 2001, Mr. Abdelmassih was grateful to get a job as a cook at a Kentucky Fried Chicken restaurant in Lansdale, Pennsylvania, earning $7.25 an hour.

4.     During the next thirteen years, Mr. Abdelmassih ("Plaintiff") approached his job at KFC with great pride, dedication and a strong work ethic. In time, he was promoted to Shift Supervisor and eventually became an Assistant Store Manager. Plaintiff had an outstanding attendance record and went out of his way to familiarize himself with KFC's equipment and operations in all of the stores where he was assigned to work, which included Lansdale, Norristown, Willow Grove and Montgomeryville.

2

5.    Plaintiff worked all of the hours that were required of him, following his employer's instruction "not to clock in" for more than 50 hours per week, never realizing that his employer was consistently violating federal and state wage and hour protections. Because of a heart condition, Plaintiff took a brief leave of absence after filling out FMLA papers in 2014. His manager, Defendant Rakesh Ramdass, retaliated against him by accusing him of "quitting" and refused to give him accrued sick pay or paperwork to apply for short-term disability (for which he had made monthly contributions throughout his employment).

6.    Four months after returning from FMLA leave, Plaintiff was given his first ever "action plan" for performance improvement, which required his employer to conduct weekly status reports and coaching. No status reports or coaching occurred. Plaintiff was fired on September 19, 2014, three months short of his 65th birthday. In addition to being subjected to discrimination, wrongful termination, and being denied basic state and federal wage and hour protections, Plaintiff was also denied benefits such as accrued sick time and short-term disability. Despite being eligible for benefits pursuant to a 401k plan and requesting them from his supervisor, Rakesh Ramdass, Plaintiff was excluded from the plan. When he was fired, Mr. Abdelmassih was earning $14.38 an hour.

## II.    JURISDICTION AND VENUE

7.    This action is brought pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634; the Americans with Disabilities Act of 1990 (ADA) and the Americans with Disabilities Act Amendments Act, 42 U.S.C. § 12101, et seq. (ADAAA); the Family and Medical Leave Act (FMLA), 29 U.S.C. § 1601, et seq.; the Pennsylvania Human

3

Relations Act, 43 P.S. §§ 951-963; the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, et seq.; the Pennsylvania Wage Payment and Collection Law (WPCL), 43 P.S. §§ 260.1, et seq.; the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, et seq.; the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. §§ 1161-1169; and a Pennsylvania Common Law claim of unjust enrichment.

8.       Mr. Abdelmassih seeks wages and other benefits of employment, which he lost as a result of Defendants' illegal actions, as well as compensatory and punitive damages. The amount in controversy, exclusive of interest and costs, exceeds $150,000.00.

9.       Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) on or around March 6, 2015 (Charge No. 530-2015-02231). This charge was dual filed with the Pennsylvania Human Resources Commission (PHRC).

10.       On August 9, 2016, Plaintiff was issued a right to sue letter from the EEOC.

11.       Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

12.       All actions complained of herein took place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania as the place in which the claims arose and the place in which Defendants conduct business.

13.       This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. State law claims asserted under the PHRA are before this Honorable Court pursuant to 28 U.S.C. § 1367, supplemental jurisdiction.

14.       Venue is proper under 28 U.S.C. § 1391(b) because Defendants conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

### III.   PARTIES

15.     Plaintiff, Magdy Abdelmassih (hereinafter "Mr. Abdelmassih"), is an adult male who currently resides at 1659 Bishopwood Boulevard East, Harleysville, Pennsylvania 19438.

16.     Defendant Mitra QSR KNE, LLC (hereinafter "Mitra"), a Texas corporation with its principal place of business at 18900 Dallas Parkway, Suite 125, Dallas, Texas 75287, is a franchisee of over 224 restaurants including 137 KFC/Taco Bell units in twelve states.  Mitra transacts or has transacted business in the Eastern District of Pennsylvania, specifically by owning and operating KFC franchise restaurants in locations including but not limited to: North Wales/Montgomeryville, Willow Grove, and Norristown, Pennsylvania.   Mitra employs in excess of fifty (50) employees and is an employer within the meaning of the applicable legislation cited herein.

17.     Defendant Rakesh Ramdass ("Ramdass") was Plaintiff's Area Coach at all relevant times.   He had the authority to act directly on behalf of Mitra QSR KNE, LLC. Ramdass oversaw at least three KFC stores during the time that Plaintiff was employed.

18.     Defendant Pushpak Patel is the Plan Administrator of the Mitra QSR 401(k) Plan ("401k" plan).   The 401k plan is an employee benefit welfare plan created pursuant to the Employee Retirement Income Security Act ("ERISA"), Section 3(1).  Pushpak is also an owner and co-CEO of Mitra, along with Defendant Manish Patel.

19.     Defendant Manish Patel is the co-CEO of Mitra, along with Pushpak Patel.

20.     Defendant Yum! Brands RSC is a corporation with its principal place of business located at 1441 Gardiner Lane, Louisville, Kentucky 40213. Yum! Brands is the parent company of KFC Corporation (a/k/a Kentucky Fried Chicken), which is the franchisor of KFC

restaurants in various locations, including but not limited to: North Wales/Montgomeryville, Willow Grove, and Norristown, Pennsylvania.

21.     Defendant KFC Corporation (KFC), a subsidiary of Yum! Brands, Inc., is a Delaware corporation with its principal place of business located at 1441 Gardiner Lane, Louisville, Kentucky 40213. KFC is the franchisor of KFC restaurants in locations including but not limited to: North Wales/Montgomeryville, Willow Grove, and Norristown, Pennsylvania.

## IV.    JOINT EMPLOYMENT ALLEGATIONS

22.     KFC, Yum! Brands, and Mitra QSR KNE, LLC are responsible, both directly and jointly, for the operation of all KFC restaurants mentioned in this Complaint, and for the policies, practices and conduct at issue in this case.

23.     Throughout the relevant period, KFC, Yum! Brands and Mitra QSR KNE, LLC, acting in a joint venture or as joint employers, have formulated, approved, controlled and engaged in the improper practices described in this Complaint and thus are jointly responsible for these practices.

24.     Throughout the relevant period, KFC, Yum! Brands and Mitra QSR KNE, LLC have been an integrated enterprise with inter-related operations, systems, policies, practices and labor relations.

25.     Throughout the relevant period, KFC, Yum! Brands and Mitra QSR KNE, LLC served as each other's agents and worked in concert to accomplish the actions pled here.

26.     Throughout the relevant period, KFC and Yum! Brands have been actively engaged in the day-to-day operation and management of business operations at all of its Franchisee-owned restaurants.

27.     All KFC restaurants receive active, ongoing support from KFC and Yum! Brands, including: quality assurance visits, marketing and advertising services, menu development, point-of-sale materials, signage and banners, public relations announcements and compliance support.

28.     Yum! University is a training program offered to KFC franchisees/employees via online learning or traditional classroom settings which provides courses in at least three categories: Culture Excellence, Leadership Excellence, and Functional Excellence. *See http://yu.yum.com/us-courses.asp* (visited on May 18, 2016).    Plaintiff attended Yum! University in Kentucky for training, including when he became an Assistant Store Manager in 2006.

29.     Individual courses offered by Yum! University include but are not limited to:

- Essentials of Human Resources
- ServSafe Certified Food Safety Manager Online Course
- Building People Capability - 360 Training
- Emotional Intelligence
- Achieving Breakthrough Results
- Introduction to HWWT[2]

*See http://yu.yum.com/culture.asp, http://yu.yum.com/leadership.asp, and http://yu.yum.com/functional.asp* (visited September 13, 2016).

30.     HWWT[2] ("How We Win Together Principles") reflects the corporate values of Yum! Brands.   According to Yum! Brands' 2015 Corporate Social Responsibility Report, "[t]his unique set of principles guides all aspects of our associates' daily work lives, professional and personal development and customer interactions." *See http://www.yumcsr.com/people/hwwt2.asp* (visited May 18, 2016).

31.     According to Yum! Brands' 2014 Corporate Social Responsibility Report,

Human resource goals have been established to guide the
Company activities in employee relations. It is the
Company's policy:

- to deal fairly with employees;
- to provide equal opportunities for all in recruiting,
  hiring, developing, promoting and compensating
  without regard to race, religion, color, age, gender,
  disability, genetic information, military or veteran
  status, sexual orientation, gender, gender identity
  and/or expression, citizenship, national origin, or
  other legally protected status;
- to maintain a professional, safe and discrimination-
  free work environment;
- to recognize and compensate employees based on
  their performance; and
- to provide a competitive array of benefits.

32.     Yum! University also offers testing, including the ServSafe Food Protection
Manager Certification Online Exam.  *See http://yu.yum.com/functional.asp* (visited May 18,
2016).

33.     Plaintiff obtained his ServSafe Certification on October 27, 2013.  KFC is the
listed sponsor.

34.     According to its franchising website, KFC has a "proven system of franchisee
training and support" and "a franchise support team that is there to assist you every step of the

way." *See   http://www.kfcfranchise.com/articles/KFC-Franchise-Opportunities-articles.php*
(visited May 17, 2016).

  35. The KFC site goes on to state:

> KFC franchise opportunities include a complete training
> and support program to assist you as you open and operate
> your business. You are taught perfect product preparation,
> how to manage inventory, how to hire and train your staff
> and how to organize your office to deliver optimum results.

*See http://www.kfcfranchise.com/articles/KFC-Franchise-Opportunities-articles.php*
(visited May 17, 2016).

  36. In or about April 2006, Mr. Abdelmassih attended a five-day management
training course at KFC's corporate headquarters in Kentucky at the conclusion of which he was
tested on what he had been taught.  Mr. Abdelmassih passed this test.

  37. According to KFC's License Disclosure Document issued on April 4,
2014,

> Equipment, inventory, advertising materials, training
> materials, uniforms, packaging, computer hardware,
> insurance, all food and beverage ingredients, as well as
> products that are used or sold at your KFC unit must be
> purchased from suppliers (manufacturers and distributors)
> approved by KFC. In addition, these items must meet
> specifications established by KFC from time to time.

38.     All KFC restaurants offer food from a menu developed and overseen by Yum! Brands and KFC.

39.     Managers and staff in all KFC restaurants receive common training, developed and overseen by Yum! Brands and KFC, with respect to all aspects of the restaurant's operations.

40.     All KFC restaurants follow the same policies and procedures, developed and overseen by KFC, for assigning employees' hourly rates, determining employees' work hours, and calculating employees' compensation.   The hourly rate paid to Plaintiff was the same hourly rate set by KFC before Mitra became a franchisee.

41.     Employees in all KFC restaurants are required to follow common policies, systems, procedures, and requirements, including policies relating to hiring, training, hours of work, overtime, timekeeping and compensation developed and promulgated by Yum! Brands and KFC.

42.     Employees in KFC restaurants perform their jobs using materials and systems Yum! Brands and KFC promulgate and oversees.

43.     Employees in KFC restaurants are supervised in the performance of their work according to criteria set by KFC.

44.     KFC's Franchise Disclosure Document describes the type of electronic cash register system and software requirements to be used in the restaurant.  Employees are required to use the KFC supported MERIT back-of-house operating platform. Employees must prepare and keep detailed records regarding all sales and other financial aspects of restaurant operations. Employees are also required to submit reports of product mix, hourly and day-part sales and other reports as may be determined by KFC.

45.     Each quarter, corporate representatives from KFC inspect each KFC location for cleanliness, food safety, service, speed (CFF Inspection).  The KFC locations where Mr. Abdelmassih worked consistently achieved high scores.

46.     At the end of each pay period, employees in all KFC restaurants receive wages set by policies, systems and procedures established by KFC.

47.     KFC and Yum! Brands are joint employers of employees in all KFC restaurants franchised by Mitra pursuant to FTC Rule 436, which defines a "franchise" as a relationship that includes "significant operating control" or "significant operating assistance."

48.     Throughout the relevant period, because of their active, ongoing role in the business operations of all KFCs franchised by Mitra, KFC and Yum! Brands were joint employers of Plaintiff as defined by the FLSA and Pennsylvania WPCL, and were responsible for the improper acts and practices described in this Complaint.

49.     At all times relevant herein, Defendants acted by and through their agents, servants and/or employees, each of whom acted in the course and scope of their employment with and for Defendants.

## V.     FACTUAL BACKGROUND

### A.     Mr. Abdelmassih's History with KFC

50.     In 2001, Mr. Abdelmassih was hired to work as a cook at the KFC in Lansdale, Pennsylvania, earning $7.25 an hour.  While in this position he received multiple raises until he was earning $11.40.

51.     In 2003 Mr. Abdelmassih was promoted to Shift Supervisor at the Montgomeryville KFC, located at 32 Airport Square, North Wales, PA.

52.     In 2006 Mr. Abdelmassih was promoted to Assistant Store Manager at the Montgomeryville KFC.

53.     In or about September 2010, at his employer's request, Mr. Abdelmassih became a Certified Food Safety Manager (CFSM).  He obtained certification from the Montgomery County Health Department (MCHD) by meeting "the requirements for reciprocity as a foodservice sanitation manager in accordance with Montgomery County Public Health Code Chapter 4, Article B 4-6." This certification was still in effect when Mr. Abdelmassih was unlawfully terminated.

54.     In August 2012, Defendant Mitra QSR KNE, LLC acquired approximately 78 KFC locations in the Northeastern United States, including the Montgomeryville store and other locations where Mr. Abdelmassih worked at all times relevant herein.

55.     In December 2012, Rakesh "Rudy" Ramdass became an Area Coach responsible for overseeing several KFC locations in the area, including the ones where Mr. Abdelmassih worked at all times relevant herein.

56.     Ramdass presents himself as an employee of YUM! Brands, according to his current LinkedIn page.  Joseph Abelard, Plaintiff's supervisor, presents himself as an employee of KFC on his current LinkedIn page.

**B.        Mr. Abdelmassih was Not Properly Compensated for Overtime Work or Meal Breaks**

57.     At the time of his termination, Mr. Abdelmassih was earning $14.38 an hour.

58.     Mr. Abdelmassih was not qualified as an exempt employee under the FLSA.

59.     Mr. Abdelmassih did not have a written employment contract with his employer.

60.     Defendants required Mr. Abdelmassih to work over 40 hours a week, doing non-supervisory duties which included, but were not limited to, preparing food, bussing tables,

cleaning inside and outside of the restaurant, checking to make sure supplies were properly shelved and/or checking inventory, cashiering, cooking, serving customers and monitoring food production.

61.     Mr. Ramdass told Abdelmassih that he was only permitted up to earn 10 hours of overtime per week ($21.57 an hour), despite the fact that he regularly worked at least 20 to 30 hours of overtime per week.

62.     In fact, KFC implemented a policy of only paying up to 40 hours of regular time and 10 hours of overtime a few months before Mitra acquired the relevant KFC franchise locations.

63.     While in training in 2006 at KFC headquarters, Mr. Abdelmassih learned how KFC employees were to clock in and out as well as how to view and edit hours.

64.     Throughout his employment, Mr. Abdelmassih was also regularly required to work on his scheduled days off, to come to work early, and to stay late.  He did so without being compensated for all hours worked.

65.     Mr. Abdelmassih worked the second shift, from 2 p.m. to midnight, and as such, was responsible for closing the store (at 11 p.m.) on the nights he worked.  In reality, he regularly worked much later.

66.     Store policy required a minimum of three employees to close a store together but Mr. Abdelmassih was instructed by Mr. Ramdass to send employees home at the end of their scheduled shifts, whether or not the store was ready to be closed, to reduce the number of labor hours paid to hourly employees.

67.     As a result, Mr. Abdelmassih was regularly alone for a few hours at the end of each shift, during which time he was responsible for non-supervisory duties such as deboning

chicken, putting dishes away, and cleaning the entire interior and exterior of the store/preparing it for opening the following day.

68.     Upon information and belief, Ramdass had access to approximately 12 surveillance video cameras in the Montgomeryville KFC store, which he viewed remotely from his smartphone.  He was thus aware of how late Mr. Abdelmassih worked.

69.     Mr. Abdelmassih ran reports at the end of the day and Ramdass regularly required that Mr. Abdelmassih call him with the information immediately so he would not have to wait to obtain it the following day.   Mr. Abdelmassih regularly called Ramdass and left voicemails with the information after the store closed.  These voicemail messages also showed that Mr. Abdelmassih was working each night well beyond midnight.

70.     At all relevant times, Defendants did not maintain true and accurate records of each hour, day, and week worked by Mr. Abdelmassih and similarly-situated individuals, as required by 29 C.F.R. § 516.   Accordingly, the exact amount of hours worked by and wages owed to Plaintiff will only be known through discovery.

71.     The work performed by Mr. Abdelmassih involved duties identical to those of cooks, dishwashers, cashiers and other non-exempt, non-management positions.

72.     Mr. Abdelmassih's pay stubs consistently show *exactly* 10 hours of overtime worked, which was not correct.

73.     In failing to pay Mr. Abdelmassih overtime premium compensation for all hours worked over 40 per week, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

### C.     Mr. Abdelmassih's Health Necessitates Time Off From Work

74.     Mr. Abdelmassih suffers from coronary artery disease and Chronic Obstructive Pulmonary Disease (COPD).

75.     In or around late February 2013, Mr. Abdelmassih began to experience symptoms including dizziness, shortness of breath and chest pain, which resulted in an ER visit. His doctor advised him to take a leave of absence.

76.     Mr. Abdelmassih requested short-term disability pay from Rudy Ramdass (since $25.00 was deducted from each bi-weekly paycheck for "short-term disability" coverage). Ramdass never gave him the paperwork.   During the period from March 18-31, 2013, Abdelmassih received a meager paycheck of accrued vacation time (less $25.00 for "short term disability").

77.     Because he never received the paperwork for short-term disability, in or around late March 2013, Mr. Abdelmassih had no choice but to return to his position as Assistant Store Manager in Montgomeryville where he continued to work for another year.

78.     In March 2014, Ramdass asked Mr. Abdelmassih to go the Willow Grove KFC for two weeks to train Michelle (LNU) to be an Assistant Manager.

79.     After he had completed the training, Abdelmassih asked Ramdass if he could return to Montgomeryville.

80.     Abdelmassih told Ramdass that the General Manager at the Willow Grove KFC, Miriam Abouseif, behaved in a hostile manner toward Mr. Abdelmassih by giving him non-managerial duties, such as cleaning drains, sweeping and picking up cigarette butts outside the store.

81.     Miriam Abouseif was also Plaintiff's niece, which made this assignment particularly difficult and caused him stress and anxiety.

82.     When Plaintiff worked overtime hours at Willow Grove and clocked out at 2 a.m., he recorded them in the system. The next morning, Miriam often overrode those hours and clocked him out at midnight, deleting the overtime hours that he had worked.

83.     On or about March 9, 2014, while working at the Willow Grove KFC, Mr. Abdelmassih began to experience chest pains.

84.     Mr. Abdelmassih went out to his car and called Mr. Ramdass, Area Coach. He told Ramdass that his heart hurt and he needed to go home and put medicine under his tongue. He said he was very stressed out from working with Miriam.

85.     Instead of asking whether he needed an ambulance, Ramdass asked him if he was "quitting." Mr. Abdelmassih said no and stated that he loved his job but needed to go home to get his medication because the chest pain was so severe.

86.     Mr. Abdelmassih went home to take his medication.

87.     On March 10, 2014, Mr. Abdelmassih saw his family doctor who advised him to take time off from work.

88.     Mr. Abdelmassih remained out of work and completed the necessary FMLA forms for the employer.

89.     Ramdass instructed Mr. Abdelmassih's son, Ramy, to drop the paperwork off at the Willow Grove KFC and said he would stop by to pick it up later.

90.     Ramy Abdelmassih delivered his father's FMLA documentation to Miriam Abousief on March 21, 2014 and notified Ramdass via text message that he had done so.

91.     Ramy later called Rudy Ramdass to ask about the status of his father's FMLA request and to find out why his father had not been receiving any paychecks while he was out of work.

92.     During their phone conversation, Rudy Ramdass told Ramy Abdelmassih that there was no proof that Magdy had actually called him from the parking lot of KFC on March 9.

93.     Rudy Ramdass also told Ramy that his father had "walked out" on his job on March 9, 2014.

94.     Ramy told Rudy Ramdass that his father had not quit his job.

95.     On or about April 22, 2014, Magdy Abdelmassih returned to work at the Montgomeryville KFC.

96.     After he returned to work, Magdy asked Rudy Ramdass why he had not been paid during the six weeks that he was out. Rudy said he did not have time to submit his FMLA paperwork because he was "too busy."

97.     Two weeks later, Mr. Abdelmassih brought the issue up again, reminding his Rudy that he had been out of work for six weeks without pay. Rudy told Plaintiff that he "didn't deserve" to be paid.

98.     Upon information and belief, neither Rudy Ramdass nor Miriam Abouseif submitted Mr. Abdelmassih's completed FMLA forms to Mitra's or YUMS! Human Resources Department.

99.     Ramdass did not supply Abdelmassih with short-term disability paperwork.

100.    Beginning in or around mid-October 2013, the fee for short-term disability coverage ($25.31) began to be deducted twice from each of Mr. Abdelmassih's bi-weekly

paychecks without notice or explanation, meaning that he was paying double what he had paid up to that point for coverage through which he never received benefits.

101.    During the six weeks Mr. Abdelmassih was out of work, he did not receive any income, despite having accrued paid time off for sick days and vacation and despite having received vacation pay during his prior medical leave in 2013.

102.    Upon information and belief, it is Mitra's policy to run FMLA leave and sick time concurrently, meaning that a person on FMLA leave should receive payment for whatever paid time off he or she has accrued up to that point.

### D.    **Pretextual Discipline and Termination**

103.    On August 16, 2014, Ramdass placed Mr. Abdelmassih on a four-week performance improvement plan ("Action Plan").

104.    Mr. Abdelmassih was placed on the Action Plan for allegedly not using peak projection worksheets, which were inventory charts that specified what quantities of each food item should be available at specific times throughout the week.

105.    Joseph Abelard, General Manager, (under age 40) was also responsible for posting peak production worksheets yet he was never disciplined or placed on an Action Plan for failing to do so.

106.    Both Mr. Abdelmassih and Mr. Abelard were trained regarding the peak production worksheets.

107.    Subsequently, Mr. Abdelmassih handwrote peak production worksheets because the printer in the KFC office was not working properly.  Plaintiff ensured that they were posted as required.

108.    The Action Plan also accused Mr. Abdelmassih of failing to address customer complaints according to company policies, which was not true.

109.    Furthermore, the Action Plan accused Mr. Abdelmassih of closing the kitchen before the close of business hours, which was also untrue.  In fact, the issue had been discussed with Ramdass prior to issuance of the Action Plan, and Mr. Abdelmassih had already explained that he had not been closing the kitchen early.

110.    The Action Plan referenced weekly status reports and coaching by Ramdass: "Each period, I will document our review of your accomplishments against 'targeted performance criteria' and will share your progress in accomplishing this Plan with you during these reviews."

111.    Mr. Abdelmassih never received coaching or weekly status reports as outlined in the Action Plan.

112.    The end date of the Action Plan was September 13, 2014.

113.    The Montgomeryville KFC was expecting a corporate inspection (CFF) -- conducted by KFC personnel -- at some point in mid-September.

114.    Mr. Abdelmassih was never contacted by Mr. Ramdass about the conclusion of the Action Plan on September 13.

115.    The CFF had not occurred as of September 13, 2014.

116.    Leading up to corporate inspections, KFC locations needed to be ready at a moment's notice because a specific date and time for inspections was not provided.  This required staff to put in extra time and effort.

117.    During the weeks leading up to the corporate inspection, the same period when the Action Plan was in effect, Mr. Abdelmassih and his General Manager, Joseph Abelard,

worked together closely to prepare for the CFF. During this period Abelard made no complaints about Mr. Abdelmassih's performance and only gave positive feedback to him.

118. Because of the upcoming inspection, Mr. Abdelmassih saw Mr. Ramdass more frequently than usual. Mr. Abdelmassih asked him repeatedly "how is everything?" and Mr. Ramdass responded that the store "looks good." Mr. Ramdass never addressed the Action Plan or indicated any dissatisfaction with Mr. Abdelmassih's performance.

119. On September 16, 2014, Mr. Abdelmassih worked late--after all of the other store employees had left--in order to ensure that the restaurant was in the best possible condition in case the inspection occurred the following day.

120. The corporate inspection, conducted by KFC, did occur the following day, Wednesday, September 17, 2014, which was Mr. Abdelmassih's scheduled day off.

121. Upon information and belief, the Montgomeryville KFC achieved a nearly perfect score.

122. On Friday, September 19, 2014, Mr. Abdelmassih heard rumors from KFC staff that he was going to be fired.

123. On the day Mr. Abdelmassih was fired, General Manager Joseph Abelard had the day off. He called Mr. Abdelmassih at home and instructed him to go to work before the scheduled start of Mr. Abdelmassih's shift because the shift supervisor was overwhelmed. He said the store was very busy and they were short-handed. Mr. Abdelmassih went in almost an hour early, punching in at 1:09 p.m.

124. At approximately 8:30 p.m. that evening (Friday, September 19, 2014) Ramdass arrived at the Montgomeryville KFC and terminated Mr. Abdelmassih.

125.    At the time of his termination, Mr. Abdelmassih was the oldest employee at the Montgomeryville KFC.

126.    Upon information and belief, Mr. Abdelmassih was replaced by someone under the age of 40.

127.    Mr. Abdelmassih never received a COBRA notice after his termination.

**E.      Interference with 401k**

128.    Despite being eligible, Mr. Abdelmassih did not obtain a 401k through either YUM! or Mitra after 2012. As a result he lost approximately 2.5 years worth of employer contributions as well as future gains on those amounts.

129.    Mr. Abdelmassih made repeated inquiries to Ramdaas about his 401k and Ramdaas failed to provide him with any information or 401k benefits.

## COUNT I

**PLAINTIFF'S CLAIMS UNDER THE
AGE DISCRIMINATION IN EMPLOYMENT ACT
29 U.S.C. §626(b)
AGAINST YUM! BRANDS RSC, KFC CORPORATION, AND MITRA QSR KNE, LLC**

130.    Plaintiff hereby incorporates all of the other allegations herein as though set forth in full.

131.    Defendants, by the discriminatory acts set forth herein, have violated the ADEA.

132.    These actions include, but are not limited to:

- failing to follow policy and procedure with regard to Plaintiff's Action Plan;

- failing to subject a younger coworker to the same disciplinary action;

- allowing a coworker to treat him in a harassing manner without investigating or taking steps to resolve the situation;

- terminating Plaintiff months before he was due to reach retirement age;

- failing to provide Plaintiff with the same benefits as other employees, such as payment during what should have been designated as FMLA leave, short term disability and 401k benefits;

- assigning him jobs that were normally performed by non-management employees; and

- replacing him with a younger employee.

133. Defendants' violations were intentional and willful under the circumstances and warrant the imposition of liquidated damages.

134. As a direct and proximate result of Defendants' violation of the ADEA, Plaintiff has sustained the injuries, damages and losses set forth herein.

135. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

**WHEREFORE**, Plaintiff Magdy Abdelmassih respectfully requests judgment against Defendant for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand Dollars ($150,000), plus cost of this action, reimbursement of back pay with interest, front pay, attorney's fees, and any other relief that this Court may deem just, proper and appropriate in the circumstances of this case.

## COUNT II

### PLAINTIFF'S CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12101, et seq.
### AGAINST YUM! BRANDS RSC, KFC CORPORATION, AND MITRA QSR KNE, LLC

136. Plaintiff hereby incorporates all of the other allegations herein as though set forth in full.

137. At all times material hereto, Plaintiff was a qualified individual with a disability within the meaning of the ADA, as amended by the ADAAA, and as defined at 42 U.S.C. § 12102(2), 29 C.F.R. § 1630.2(g), in that he has coronary artery disease and COPD, which limit one or more of his major life activities, and that he was capable of performing the essential functions of his job at KFC with or without a reasonable accommodation.

138. Defendant knew or should have known that Plaintiff suffered from coronary artery disease and COPD.

139. Defendant intentionally discriminated against Plaintiff in violation of the ADA by:

- accusing him of quitting his job on or around March 9, 2014 after he informed Area Coach Rudy Ramdass that he needed to go home to take nitroglycerin pills;

- failing to pay Mr. Abdelmassih for any accrued vacation or sick days while he was out of work on medical leave in March/April 2014; and

- terminating him in September 2014 because of his known, actual and/or perceived health problems and/or record of health problems/impairment.

140.     Defendant's aforesaid actions were outrageous, egregious, malicious, intentional, willful, wanton and in reckless disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

**WHEREFORE,** Plaintiff Magdy Abdelmassih respectfully requests judgment against Defendant for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand Dollars ($150,000), plus cost of this action, reimbursement of back pay with interest, front pay, attorney's fees, and any other relief that this Court may deem just, proper and appropriate in the circumstances of this case.

**COUNT III**

**PLAINTIFF'S CLAIMS UNDER THE FAMILY AND MEDICAL LEAVE ACT OF 1993
29 U.S.C. § 2601 (Interference & Retaliation)
AGAINST ALL DEFENDANTS**

141.     Plaintiff hereby incorporates all of the other allegations herein as though set forth in full.

142.     The Family and Medical Leave Act, 29 U.S.C. § 2615(a)(2) ("FMLA") makes it unlawful for an employer to interfere with an employee's right to take a leave of absence under the FMLA.

143.     Plaintiff was an eligible employee under the definitional terms of the Family and Medical Leave Act, 29 U.S.C. § 2611(2)(a)(i)(ii).

144.     Plaintiff requested leave from the Defendants, his employers, with whom he had been employed for at least twelve (12) months and had at least 1,250 hours of service.

145.     Defendants employed more than 50 employees at their Montgomeryville, Norristown and Willow Grove locations or within a 75 mile radius of these worksites.

146.    Defendants' refusal to process Plaintiff's completed FMLA documentation and subsequent failure to approve and designate his leave as FMLA leave was intended to interfere with Plaintiff's right to take the leave.

147.    The FMLA makes it unlawful for an employer to retaliate against an employee because the employee has taken or sought leave under the FMLA.

148.    Plaintiff was subject to adverse action in that Defendants refused to give him accrued sick pay or short-term disability forms, accused him of quitting when he requested FMLA leave, and terminated his employment less than six months after he took leave.

149.    Defendants' deliberate retaliation and interference are violations of the Family Medical Leave Act, 29 U.S.C. § 2601, et seq.   This conduct has caused Plaintiff to suffer damages.

**WHEREFORE,** Plaintiff Magdy Abdelmassih respectfully requests judgment against Defendant for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand Dollars ($150,000), plus cost of this action, reimbursement of back pay with interest, front pay, attorney's fees, and any other relief that this Court may deem just, proper and appropriate in the circumstances of this case.

## COUNT IV

**THE PENNSYLVANIA HUMAN RELATIONS ACT**
**43 P.S. §§ 951-963**
**AGAINST YUM! BRANDS RSC, KFC CORPORATION, AND MITRA QSR KNE, LLC**

150.    Plaintiff hereby incorporates all of the other allegations herein as though set forth in full.

151.    Plaintiff believes and avers that he was terminated from employment because of his age, his disability, record of impairment, and perception that he was disabled in violation of the PHRA.

152.    As a direct result of willful and unlawful actions as aforesaid, in violation of the PHRA, the Plaintiff has suffered emotional distress, humiliation, embarrassment, loss of self-esteem and has sustained a loss of earnings, plus the value of the aforementioned benefits, plus loss of future earning power, plus loss of back pay and front pay and interest due therefrom.

**WHEREFORE**, Plaintiff Magdy Abdelmassih respectfully requests judgment against Defendant for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand Dollars ($150,000), plus cost of this action, reimbursement of back pay with interest, front pay, attorney's fees, and any other relief that this Court may deem just, proper and appropriate in the circumstances of this case.

## COUNT V

### PLAINTIFF'S CLAIMS UNDER THE FAIR LABOR STANDARDS ACT
### 29 U.S.C. §§ 201, *et seq.*
### AGAINST ALL DEFENDANTS

153.    Plaintiff hereby incorporates all of the other allegations herein as though set forth in full.

154.    The FLSA entitles Plaintiff to overtime premium pay of "not less than one and one-half times" his regular pay rate for every hour worked over 40 per week

155.    Defendants violated the FLSA by failing to pay Plaintiff overtime premium compensation owed for all hours worked over 40 per week.

156.    In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

**WHEREFORE**, Plaintiff Magdy Abdelmassih respectfully requests judgment against Defendant for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand Dollars ($150,000), plus cost of this action, reimbursement of back pay with interest, front pay, attorney's fees, and any other relief that this Court may deem just, proper and appropriate in the circumstances of this case.

**COUNT VI**

**PLAINTIFF'S CLAIMS UNDER THE PENNSYLVANIA WAGE PAYMENT
AND COLLECTION LAW
43 P.S. §§ 260.1, et seq.
AGAINST ALL DEFENDANTS**

157.    Plaintiff hereby incorporates all of the other allegations herein as though set forth in full.

158.    Defendants are "Employers" as defined in WPCL § 2.1

159.    The WPCL requires Defendants to timely pay full wages due to Plaintiff and provides statutory damages for the failure to timely pay all wages due.

160.    Defendants willfully failed to pay Plaintiff all amounts of wages due, including overtime, within the time limits set forth in 43 P.S. §§ 260.1, et seq.

161.    Defendants violated the WPCL and acted with reckless disregard of clearly applicable WPCL provisions by knowing, suffering, or permitting Plaintiff to work "off-the-clock" without tracking his work and paying all wages owed, or paying Plaintiff overtime for non-exempt work performed.

27

162.   Plaintiff has been harmed as a direct and proximate result of the unlawful conduct described herein, because he has been deprived of wages owed for work performed from which Defendants derived a direct and substantial benefit.

163.   Defendants have no good faith justification or defense for the conduct detailed above, or in failing to pay Plaintiff all wages mandated by the WPCL.

**WHEREFORE**, Plaintiff Magdy Abdelmassih respectfully requests judgment against Defendant for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand Dollars ($150,000), plus cost of this action, reimbursement of back pay with interest, front pay, attorney's fees, and any other relief that this Court may deem just, proper and appropriate in the circumstances of this case.

<u>**COUNT VII**</u>

**PLAINTIFF'S CLAIMS FOR INTERFERENCE WITH PROTECTED RIGHTS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) 29 U.S.C. §§ 1001, et seq.** <u>**AGAINST MITRA**</u>

164.   Plaintiff hereby incorporates all of the other allegations herein as though set forth in full.

165.   Defendants, by and through their employees and agents, individually and in concert with each other, discharged and otherwise discriminated against Plaintiff for exercising rights to which he was entitled under the provisions of an employee benefit plan, or for the purpose of interfering with the attainment of rights to which he may have become entitled under the plan, in violation of the Employee Retirement Income Security Act, specifically 29 U.S.C. §1140.

166.   Defendants' intent to interfere with Plaintiff's benefits is demonstrated in numerous ways, including but not limited to the actions of Rudy Ramdass, who refused to initiate the process of opening a 401k account for Mr. Abdelmassih through Mitra in a timely fashion despite repeated requests, in Defendants' failure to offer short term disability when Mr. Abdelmassih was on medical leave, and in Defendants' failure to supply required notices under COBRA to Plaintiff.

167.   Defendants discharged Mr. Abdelmassih in retaliation for exercising his rights under the employee benefit plan.

168.   Defendants, including Mr. Ramdass, acted with specific intent to interfere with Mr. Abdelmassih's rights under ERISA.

169.   The conduct has caused Plaintiff to suffer emotional distress, mental anguish, monetary loss, wage loss, loss of self-esteem, personal humiliation and loss of enjoyment of life.

**WHEREFORE,** Plaintiff Magdy Abdelmassih respectfully requests judgment against Defendant for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand Dollars ($150,000), plus cost of this action, reimbursement of back pay with interest, front pay, attorney's fees, and any other relief that this Court may deem just, proper and appropriate in the circumstances of this case.

## COUNT VIII

### PLAINTIFF'S CLAIMS FOR VIOLATIONS OF THE CONSOLIDATED OMNIBUS BUDGET RECONCILIATION ACT (COBRA), 29 U.S.C. §§ 1161-1169 AGAINST ALL DEFENDANTS

170.    Plaintiff hereby incorporates all of the other allegations herein as though set forth in full.

171.    Plaintiff suffered a qualifying event under ERISA § 603, 29 U.S.C. § 1163(2) when he was terminated from employment on September 19, 2014.

172.    By failing to provide COBRA notice to Plaintiff within thirty (30) days of his termination, Defendants violated ERISA § 606, 29 U.S.C. 1166.

173.    As a result of Defendants' COBRA violation, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff Magdy Abdelmassih respectfully requests judgment in his favor against Defendants for compensatory, liquidated and punitive damages in an amount exceeding One Hundred Fifty Thousand Dollars ($150,000), including the daily penalty of $110.00, as set forth in ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1) for Defendants' failure to issue appropriate COBRA notice as required by ERISA, the reimbursement of all benefits that Plaintiff would have received if not for Defendants' illegal conduct, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT IX

### PLAINTIFF'S CLAIMS FOR UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

174.    Plaintiff hereby incorporates all of the other allegations herein as though set forth in full.

175.    Mr. Abdelmassih conferred a benefit on Defendants by working additional hours before he clocked in and after he clocked out at night, by working additional hours on his

scheduled days off without clocking in or out, and by working through breaks without being paid.

176.   Mr. Abdelmassih completed his work for the benefit of Defendants.

177.   Defendants did not compensate Mr. Abdelmassih for all the hours he worked.

178.   As a result of Defendants' failure to compensate Mr. Abdelmassih for all hours he worked, he suffered a loss in pay which also affected his accrual of sick time/vacation pay and continues to affect him as he received decreased Unemployment benefits, no 401K from Mitra and decreased Social Security Retirement payments.

179.   Defendants saved money by not paying Mr. Abdelmassih for all hours worked and by not paying at least two other employees to stay at night to close the store with him, which was required by company policy.

**WHEREFORE**, Plaintiff Magdy Abdelmassih respectfully requests judgment against Defendant for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand Dollars ($150,000), plus cost of this action, reimbursement of back pay with interest, front pay, attorney's fees, and any other relief that this Court may deem just, proper and appropriate in the circumstances of this case.

**COLLIER LAW, P.C.**

BY: _____

**JOYCE L. COLLIER, ESQUIRE**
Attorney for Plaintiff

Date:  September 13, 2016

**COLLIER LAW, P.C.**
BY:    **JOYCE COLLIER, ESQ.** (ID No. 54324)
1432 Bethlehem Pike, Suite D
Flourtown, PA 19031
(267) 422-6174
*Attorney for Plaintiff Magdy Abdelmassih*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAGDY ABDELMASSIH** | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO. |
| | : | |
| v. | : | |
| | : | |
| **MITRA QSR KNE LLC; RAKESH RAMDASS;** | : | JURY TRIAL DEMANDED |
| **PUSHPAK PATEL,** Individually and as | : | |
| Plan Administrator of the Mitra 401(k) Plan; | : | |
| **MANISH PATEL; KFC CORPORATION;** | : | |
| and **YUM! BRANDS RSC** | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I, JOYCE L. COLLIER, ESQUIRE, hereby certify that a true and correct copy of

Plaintiff's Complaint was served via Electronic Mail and Certified Mail to the following:

Christina Marshall, Esq.
General Counsel
18900 Dallas Pkwy, Ste. 125
Dallas, TX 75287
(214) 774-4240, ext. 205
christina.marshall@chalakmitragroup.com

and

Robert P. Floyd, III, Esquire
Constancy, Brooks, Smith & Prophete LLP
12500 Fair Lakes Circle, Suite 300
Fairfax, VA 22033
571-522-6109
RFloyd@constangy.com

and via Certified Mail to the following:

Corporate Creations Network, Inc.
1001 State Street
#1400
Erie, PA  16501


BY: _____
JOYCE L. COLLIER, ESQUIRE
Attorney for Plaintiff

Dated: September 13, 2016